**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|   |   |   |
|---|---|---|
| ANGELA LYNN TRAVO, | **:** | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:19-cv-1335(RAR) |
| | : | |
| ANDREW M. SAUL, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| defendant. | : | |

**RULING ON PENDING MOTIONS**

Angela Lynn Travo ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated May 9, 2019.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing and remanding her case for a hearing (Dkt. #14-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #16-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is DENIED and the Commissioner's motion to affirm is GRANTED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[2]

### PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II and Title XVIII on April 11, 2014.  (R. 171.)[3] Plaintiff alleged a disability onset date of March 22, 2014. (R. 171.)  At the time of application, plaintiff alleged that she suffered from fibromyalgia, chronic pain, chronic fatigue syndrome, depression, anxiety, restless leg syndrome, hypothyroidism, anemia, and panic attacks.  (R. 68.)  The

---

Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

[3] The Court cites pages within the administrative record as "R. ___."

initial application was denied on May 22, 2015, and again upon
reconsideration on August 20, 2014.  (R. 68-82, 85-101).
Plaintiff then filed for an administrative hearing which was
held by ALJ Deidre R. Horton (hereinafter the "ALJ") on July 15,
2015.  (R. 39-67.)  The ALJ issued an unfavorable decision on
August 25, 2015.  (R. 19-32.)  Plaintiff filed a request for
review with the Appeals Council on October 15, 2015.  (R. 7.)
The Decision Review Board denied plaintiff's request for review
on January 13, 2017.  (R. 1-5.)

Plaintiff then sought judicial review on December 8, 2017.
(R. 1168-1189.)  The Court remanded plaintiff's case for a new
ALJ hearing on February 14, 2018.  (R. 932.)  A second ALJ
hearing was held on February 20, 2019.  (R. 851-898.)  The ALJ
issued a second unfavorable decision on May 9, 2019.  (R. 824-
839.)  Plaintiff then filed this action seeking judicial review.
(Dkt. #14-2.)

## DISCUSSION

Plaintiff argues that the ALJ failed to develop the record,
violated the treating physician rule, erred in her analysis of
plaintiff's fibromyalgia and chronic pain, and that the ALJ's
determinations at step five are not supported by substantial
evidence.  (Pl. Br. 1, 9, 15, 18.)  Based on the following, the
Court rejects plaintiff's arguments and therefore affirms the
ALJ's opinion.

I.   **The ALJ Did Not Fail to Develop the Record.**

Plaintiff argues that the ALJ failed to develop the record by not obtaining Dr. Pomeraniec's treatment notes from June 2015 to October 2018, and by not enforcing the subpoena issued to obtain plaintiff's medical records from Dr. Sable.  The Court disagrees.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts, 94 F.3d at 37-38).

a. *The ALJ did not err by failing to obtain medical records from Dr. Pomeraniec from June 2015 to October 2018.*

Plaintiff argues that an obvious gap was created in the record due to the lack of medical records from Dr. Pomeraniec from June 2015 to October 2018.  Thus, plaintiff argues that the ALJ failed to develop the record by not obtaining the additional medical records from Dr. Pomeraniec.  The Court disagrees.

The Regulations provide that an ALJ "will develop [the plaintiff's] complete medical history for at least the 12 months preceding the month in which" the plaintiff files an application for social security disability benefits, "unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff] say[s] that [his or her] disability began less than 12 months before [the plaintiff] filed [his or her] application."  20 C.F.R. § 404.1512(b)(1).

The Regulations further provide that the ALJ "will make every reasonable effort to help [the plaintiff] get medical evidence from [his or her] own medical sources and entities that maintain [his or her] medical sources' evidence when [the plaintiff] give[s] [the ALJ] permission to request the reports." Id.  "Every reasonable effort means that [the ALJ] will make an initial request for evidence from [the plaintiff's] medical source or entity that maintains [the plaintiff's] medical source's evidence and . . . if the evidence has not been received, [the ALJ] will make one follow-up request to obtain the medical evidence necessary to make a determination."  Id.

The ALJ does not have a duty to request additional evidence where the evidence in the record is "adequate for [the ALJ] to make a determination as to disability."  Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996).  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already

possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

"The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" <u>Santiago v. Astrue</u>, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011)(quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009)).  Where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden." <u>Santiago</u>, 2011 WL 4460206, at *2 (rejecting that the ALJ was required to obtain additional medical records where the plaintiff did not attempt to obtain the medical records following the decision or indicate their importance).

As plaintiff filed her application for social security benefits less than twelve months after her alleged onset date, the ALJ was required to obtain medical records beyond the twelve months preceding her application for benefits.  20 C.F.R. § 404.1512(b)(1).  The record includes plaintiff's treatment notes from Dr. Pomeraniec from June 22, 2009 to June 23, 2015.  (R. 577–578, 1418.)  Upon remand of the ALJ's original decision, the

ALJ requested legible and transcribed treatment notes from April 1, 2013 to July 6, 2015.  (R. 1399.)  Dr. Pomeraniec's treatment notes cover roughly sixteen months of the relevant period as well as just under the twelve months prior to plaintiff alleged onset date.  Following the Court's remand of plaintiff case, Dr. Pomeraniec submitted a subsequent medical source statement possibly indicating that he had continued to treat plaintiff through the date of the opinion, September 17, 2018.  (R. 1553.)

While plaintiff lists a number of medical records that she believes may be missing, plaintiff does not suggest that the medical records will demonstrate she is disabled or that the ALJ's opinion is not supported by substantial evidence. Plaintiff merely takes issue with their absence.  As indicated in Santiago, such an assertion is insufficient to warrant remand.

As in Santiago, plaintiff does not ascribe any importance to the additional medical records.  Plaintiff does not assert that she did not know of her continued treatment and therefore was unable to notify the ALJ on remand to request continued treatment notes beyond July 2015.  Similarly, Plaintiff did not seek to obtain the medical records, notify the ALJ of their absence from the record on remand, or claim that they demonstrate a worsening of her condition which would support Dr. Pomeraniec's opinions.

Plaintiff has failed to establish that the missing records are significant.  Therefore, the ALJ did not err by failing to request the additional medical records.

b. *The ALJ did not err by not enforcing the subpoena to obtain plaintiff's medical records from Dr. Sable.*

Plaintiff argues that there was an obvious gap in the record due to lack of medical records from Dr. Sable.  (Pl. Br. 2.)  Plaintiff asserts that while the ALJ issued a subpoena to obtain the records, the ALJ failed to develop the record by not ensuring Dr. Sable received the subpoena and then by not enforcing the subpoena.  The Court disagrees.

"ALJs have discretion not to enforce subpoenas." Polanco v. Berryhill, No. 3:18-CV-01063 (JAM), 2019 WL 2183121, at *4 (D. Conn. May 21, 2019).  "While at one time an ALJ may have been required to explain her reasons for not enforcing a subpoena, this is no longer the case." Id.  The case law supporting the contrary assertion was grounded in a Social Security Handbook provision which has since been removed.  Id. Since the removal, a number of courts have found that the ALJ is not required to explain her reasons for not enforcing the subpoena. Id. at *5 (citing Gonell De Abreu v. Colvin, No. 16-CV-4892 (BMC), 2017 WL 1843103, at *3, *5 (E.D.N.Y. May 5, 2017); Serrano v. Barnhart, No. 02 CIV. 6372 (LAP), 2005 WL 3018256, at *3–4 (S.D.N.Y. Nov. 10, 2005); Bennett v. Colvin,

No. 3:15-CV-00302, 2016 WL 308777, at *5 (N.D. Ohio Jan. 26, 2016), judgment entered, No. 3:15-CV-00302, 2016 WL 320822 (N.D. Ohio Jan. 26, 2016).

However, where the present action was previously remanded to obtain the now subpoenaed medical records, the ALJ must articulate her reasons for failing to enforce the subpoena. Pniewski v. Colvin, No. 3:16-cv-00290-AVC, slip op. at *21 (D. Conn. April 20, 2018). "Once the ALJ decided to attempt to develop the record on remand by issuing a subpoena, the ALJ was obligated to either enforce the subpoena or take further steps to develop the record." Id. at *24.

Plaintiff relies on Pniewski for support that the ALJ should have ensured that Dr. Sable received the subpoena for plaintiff's medical records. (Pl. Br. 8.) However, the present action was not previously remanded to obtain the medical records from Dr. Sable. (R. 937–942.) The present action was remanded to obtain legible medical notes from Dr. Pomeraniec, which were then requested and obtained. (R. 941, 1399–1428.) Therefore, plaintiff's reliance on the Pniewski exception requiring an ALJ to enforce a subpoena on remand is misplaced.

Plaintiff merely requested on remand that the ALJ issue a subpoena for Dr. Sable's medical records which the ALJ then did. (R. 854, 1050–1052.) The subpoena was returned to the ALJ as received but unclaimed. (R. 1190–1194.) Dr. Sable was

11

contacted again for medical records, however, Dr. Sable refused
to provide the medical records. (R. 1154, 1147–1153.)

It is clear that the ALJ made "every reasonable effort to
help [the plaintiff] get medical evidence from [her] own medical
sources."  20 C.F.R. § 404.1512(b)(1).  "Every reasonable effort
means that [the ALJ] will make an initial request for evidence
from [the plaintiff's] medical source or entity that maintains
[the plaintiff's] medical source's evidence and . . . if the
evidence has not been received, [the ALJ] will make one follow-
up request to obtain the medical evidence necessary to make a
determination."  Id.  The ALJ made multiple attempts to obtain
plaintiff's medical records from Dr. Sable, including issuing a
subpoena.  The ALJ went beyond what was required to obtain
plaintiff's medical records, and unfortunately, Dr. Sable simply
was defiant of the Social Security Administration's requests.
Under the circumstances, it cannot be said that the ALJ failed
to develop the record.

**II.  The ALJ Did Not Violate the Treating Physician Rule**

Plaintiff argues that the ALJ violated the treating
physician rule by failing to provide good reason for assigning
less than controlling weight to the opinions of Dr. Pomeraniec
and Dr. Barasch.  (Pl. Br. 9–14.)  Plaintiff asserts that the
ALJ's determination that the opinions were inconsistent with the
record was unsupported and that the ALJ improperly stated that

Dr. Pomeraniec's opinion was driven more as an advocate rather than based on medical findings.  (Pl. Br. 10, 11.)  Plaintiff also argues that the ALJ violated the treating physician rule by failing to explicitly examine the factors set out in 20 C.F.R. § 404.1527.  The Court disagrees.

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the

opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

   In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

   After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing (citing Burgess v. Astrue, 537

F.3d 117, 129 (2d Cir. 2008))(alteration in original).  The ALJ
may not simply substitute his own judgment for that of the
treating physician, and failure to provide good reasons for the
weight given to a treating physician's opinion is grounds for
remand.  Id.

    "SSA regulations provide a very specific process for
evaluating a treating physician's opinion" and failure to
"*explicitly consider*" any of the named factors is grounds for
rejecting the ALJ's decision.  Greek, 802 F.3d 370, 376 (2d Cir.
2015) (emphasis added).  However, an ALJ is not required to
explicitly cite to the treating physician rule or its factors.
Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).
It is sufficient that the ALJ substantively reference the rule
and provide good reason for not assigning a plaintiff's treating
physician controlling weight.  Id.

    First, the Court rejects plaintiff's assertion that the ALJ
was required to explicitly examine the factors set out in 20
C.F.R. § 404.1527.  As the Second Circuit Court of Appeals
articulated in Cromwell, it is sufficient that the ALJ
substantively reference the factors and provide good reason for
assigning the treating physician's opinion less than controlling
weight.  Crowell, 705 Fed. Appx. at 35.  The ALJ did just so.

    When examining Dr. Pomeraniec's opinions, the ALJ noted the
treating relationship and length of treatment, and the

consistency of the opinions with Dr. Pomeraniec's treatment notes, plaintiff's other medical records, and plaintiff's activities of daily living. (R. 835–834.)  Overall, the ALJ determined that Dr. Pomeraniec's opinion was inconsistent with the record.  As noted by the ALJ, Dr. Pomeraniec determined that plaintiff would be off task more than 30 percent and generally would not be able to perform competitive work activity on a sustained basis. (R. 835, 1555.)

Dr. Pomeraniec also opined that plaintiff's ability to travel in unfamiliar places or use public transportation was diminished by 10 percent in an eight-hour workday. (R. 1555.) Dr. Pomeraniec also opined that plaintiff's performance was precluded by 15 percent as it relates to her ability to maintain activities in a schedule, maintain a regular schedule, and be punctual, as well as maintain attention for a prolonged period of time. (R. 1554.)

However, the ALJ noted that Dr. Pomeraniec's treatment notes indicated that plaintiff reported that she was coping well, keeping busy, traveling quite frequently, and assisting with the care of her mother in law.  (R. 836, 1400–1409, 1411–1417.)[4]  Plaintiff also reported that she was continuing to look

---

[4] Dr. Pomeraniec provided legible, transcribed copies of plaintiff's treatment notes as well as the illegible originals. The Court only cites to the transcribed notes.

for work and at one point had secured employment and noted an
improvement in her mood.  (R. 1403-1405.)  As also noted by the
ALJ, plaintiff worked as a nanny, frequently traveled which
included national and international trips, cared for family
members, and drove herself to run errands.  (R. 827, 859, 861,
869, 873, 879, 881-882, 1670, 1671.)

Regarding Dr. Barasch's opinion, the ALJ noted that Dr.
Barasch noted that plaintiff suffered from fibromyalgia which
manifested in pain in her lumbosacral spine, cervical spine,
shoulders, arms, hips, and legs.  (R. 774.)  Dr. Barasch failed
to indicate whether the pain was in either plaintiff's right,
left, or in both of each extremity listed.  (R. 774.)  Dr.
Barasch noted that plaintiff could not work full time due to
severe fatigue and would require accommodations at work to allow
for shifting positions, walking and unscheduled breaks, although
he declined to note plaintiff's specific limitations.  (R. 776.)

Dr. Barasch also noted that plaintiff was capable of low
stress work but would be off task 25 percent or more of the
workday and absent more than four days per month.  (R. 777.)
Finally, Dr. Barasch noted that plaintiff was moderately limited
in her ability to conduct activities of daily living, maintain
social functioning, and complete tasks in a timely manner due to
deficiencies in concentration, persistence, or pace.  (R. 778.)

The ALJ noted, however, that Dr. Barasch's opinion was inconsistent with his medical records, plaintiff's activities of daily living and the record as a whole. (R. 836.) The ALJ then assigned Dr. Barasch's opinion minimal weight. (R. 836.) The ALJ noted that while Dr. Barasch opined that plaintiff had significant limitations, Dr. Barasch repeatedly noted that plaintiff's physical examination was unremarkable, she maintained good attention and concentrations skills, her memory was intact, and her general fund of information was good. (R. 684, 747, 1345.)

Despite noting that plaintiff experienced pain in her extremities, Dr. Barasch repeatedly noted normal strength and recommended plaintiff begin exercising. (R. 684-85, 747, 748, 1345.) Dr. Barasch noted that plaintiff reported a decline in her status, but that medical examination and blood tests were normal and he could not determine why her status deteriorated. (R. 685.) Finally, Dr. Barasch noted that he based plaintiff's work limitations on plaintiff's subjective reports of fatigue. (R. 1345.)

The ALJ's examination of the inconsistencies of the opinions of Dr. Pomeraniec and Dr. Barasch provided good reason to accord them less than controlling weight. The ALJ articulated that the opinions lacked support by each physician's own medical observations, were inconsistent with the record and

plaintiff's activities of daily living, which included working as well as both national and international travel.  Because the ALJ provided good reasons for according less than controlling weight to the opinions, the ALJ did not violate the treating physician rule.

### III. The ALJ Properly Examined Plaintiff's Allegations of Pain and Symptoms of Fibromyalgia

Plaintiff argues that the ALJ improperly evaluated her symptoms of pain and her fibromyalgia.  Plaintiff argues that the ALJ applied an incorrect standard of review when examining plaintiff's symptoms and therefore the Court must reverse.  The Court disagrees.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c). While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence. Id. at § 404.1529(c)(2).

Plaintiff argues that the ALJ improperly evaluated plaintiff's claims of pain by not accepting them as completely true as to the extent plaintiff alleges. (Pl. Br. 17.) Plaintiff asserts that there is no medical evidence that refutes her pain and therefore her testimony should have been accepted as credible. (Pl. Br. 17–18.) Plaintiff is incorrect. As noted above, the ALJ is required to follow a two-step process and the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

At step one, the ALJ determined that plaintiff suffered from a number of severe impairments that could reasonably be expected to produce the symptoms alleged: fibromyalgia, low back pain, depressive disorder, cocaine abuse disorder, and hearing loss in her right ear. (R. 827, 829.) At step two, however, the ALJ determined that plaintiff's statements regarding the intensity, persistence, and limiting effect of these symptoms were not entirely consistent with the medical evidence. (R. 830.)

The ALJ examined plaintiff's statements and the extent to which they were consistent with the objective medical evidence and other evidence. As the ALJ noted, plaintiff routinely had normal exams which demonstrated normal strength and range of motion in her back and extremities. (R. 684–85, 747, 748, 1345.) Plaintiff's pain was also reported as stable or improving and her doctors recommended that she begin exercising. (R. 733–734, 738, 741, 744, 748, 780, 793, 794, 799, 1411, 1415.) Despite plaintiff's allegations that her fatigue and other symptoms prevented her from working, plaintiff worked as a nanny, cared for her elderly mother-in-law, and frequently traveled to places including Las Vegas, Nebraska, Florida, and Italy. (R. 827, 859, 861, 869, 873, 879, 881–882, 1408, 1409, 1413, 1414, 1415, 1416, 1670, 1671.)

Further, much of plaintiff's limitations were not supported by any medical findings and were based primarily on her subjective reports.  (R. 685, 747, 1345.)  Dr. Barasch noted that plaintiff reported a decline in her status, but that medical examination and blood tests were normal, and he could not determine why her status deteriorated.  (R. 685.)  Dr. Barasch noted that he based plaintiff's work limitations on plaintiff's subjective reports of fatigue.  (R. 1345.)

As the Second Circuit has stated, the ALJ was not required to accept plaintiff's subjective assertions as true.  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ properly determined that plaintiff's allegations of pain were not supported by the medical evidence and inconsistent with plaintiff's activities of daily living.

Plaintiff further argues that a heightened standard is applied when examining plaintiff's fibromyalgia which requires an examination of all her symptoms in combination.  (Pl. Br. 15.)  Plaintiff asserts that Social Security Ruling ("SSR") 12-2p creates this heightened standard.  SSR 12-2p, 2012 SSR LEXIS 1.  Plaintiff's assertion is incorrect.

SSR 12-2p uses almost the identical standard as indicated above.  SSR 12-2p provides, "[h]ow do we evaluate a person's statements about his or her symptoms and functional limitations? We follow the two-step process set forth in our regulations and

22

in SSR 96-7p." Id. at *14. "First step of the symptom evaluation process. There must be medical signs and findings that show the person has [a medically determinable impairment] which could reasonably be expected to produce the pain or other symptoms alleged." Id. at *14. At step two, the ALJ will

> then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ will] consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. . . . [W]e will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

Id. at *14-15.

Clearly, no greater standard of review was created for plaintiff's fibromyalgia. Rather, the same standard applies to plaintiff's pain regardless of whether it is brought on by fibromyalgia or some other impairment. Therefore, the ALJ's examination of plaintiff's pain and fibromyalgia was sufficient.

Having found no error in the ALJ's examination of plaintiff's pain and fibromyalgia, the Court affirms the ALJ's analysis.

## IV.  The ALJ's Analysis at Step Five is Supported by Substantial Evidence

Plaintiff argues that the ALJ's step five determination is not supported by substantial evidence because the vocational expert, Jane Gerrish, did not provide adequate support for her evaluation of the number of jobs available in the national economy, Ms. Gerrish's testimony is inconsistent with the Dictionary of Occupational Titles, and the ALJ's hypothetical improperly left out plaintiff's limitations in concentration, persistence, and pace.  (Pl. Br. 18–24.)  The Court disagrees.

At Step Five, the ALJ must determine whether a significant number of jobs exist in the national economy which the plaintiff can perform.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved."  Id. (internal citations omitted) (alterations in original) (quoting Dumas v. Schweiker, 712 F.2d

1545, 1553-54 (2d Cir. 1983)) (citing <u>Aubeuf v. Schweiker</u>, 649 F.2d 107, 114 (2d Cir. 1981)).

A vocational expert's failure to provide scientific data supporting his or her conclusion as to the number of jobs available in the national economy may still be supported by substantial evidence. <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1157 (2019). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record." <u>Id.</u> While the refusal to present scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close." <u>Id.</u>

The vocational expert's credentials, history of testimony, her ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony are all relevant in providing substantial evidence for her opinion. <u>See id.</u> at 1155.

The Second Circuit Court of Appeals has held that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." <u>McIntyre</u>, 758 F.3d at 152. "[T]he ALJ [may] reasonably credit[] [a vocational expert's] testimony, which was given on the basis of the

expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record." Id.

At the February 20, 2019 hearing, the ALJ posed a hypothetical to the vocational expert, Jane Gerrish, identical to his RFC determination.  (R. 887.)  Ms. Gerrish testified that a hypothetical person with such limitations would be able to work as a linen grader, approximately 15,000 jobs nationally, parking lot attendant, approximately 50,000 jobs nationally, and a school bus monitor, approximately 10,000 jobs nationally.  (R. 887-88.)  Ms. Gerrish also testified that her numbers were based on census codes and adjusted for DOT codes based on what Ms. Gerrish considered fair and accurate in light of her experience placing individuals in these jobs.  (R. 890.)

Plaintiff asserts that Ms. Gerrish's testimony is unreliable because rather than provide a specific formula of how she determined the number of jobs in the national economy, she calculated the numbers randomly.  (Pl. Br. 19.)

In Biestek, the vocational expert testified as to the number of jobs in the national economy that the plaintiff could perform.  Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  On cross-examination, plaintiff's counsel asked the vocational expert how she determined the numbers.  Id.  The vocational expert stated that the numbers were consistent with personal surveys she had conducted with her clients but refused to

produce the surveys.  Id.  Upon judicial review, the plaintiff
argued that the ALJ's step five conclusions were not supported
by substantial evidence because the vocational expert refused to
share how she calculated the number of jobs in the national
economy.  Id.

The Supreme Court held that "if our expert's opinion was
sufficient—i.e., qualified as substantial evidence—before the
refusal, it is hard to see why the opinion has to be
insufficient afterward."  Id. at 1156.  Therefore, where "the
ALJ views the expert and her testimony as otherwise trustworthy,
and thinks she has good reason to keep her data private, her
rejection of an applicant's demand need not make a difference."
Id.

The Supreme Court also held that absent any demand for the
data, "a vocational expert's testimony may count as substantial
evidence even when unaccompanied by supporting data."  Id. at
1155.  The Court emphasized the low standard of proof to
constitute substantial evidence and stated that a vocational
expert's testimony far surpasses the substantial evidence
standard where a qualified expert with a history of giving sound
experience, professional qualifications, and many years of
experience, who testifies that her data is based on her work
with placing employees without any evidence to conflict with her
testimony.  Id.

Here, plaintiff asserts that the ALJ's conclusions could not possibly be supported by substantial evidence because the vocational expert used an undisclosed methodology to determine the number of jobs available in the national economy. (Pl. Br. 20-21.) Plaintiff notes that she objected to Ms. Gerrish serving as a vocational expert at the hearing because nothing in Ms. Gerrish's resume indicates that Ms. Gerrish had the expertise to determine the job incidence data on a national basis. (R. 885-886.) The ALJ overruled plaintiff's objection and qualified Ms. Gerrish as an expert. (R. 886.)

Ms. Gerrish has served as a vocational expert for the Social Security Administration since 1991, amounting to about 28 years of expert testimony by the date of plaintiff's hearing. (R. 1143.) Ms. Gerrish also served as a vocational rehabilitation counselor since 1991. (R. 1143.) Ms. Gerrish holds multiple master's degrees and has served as a vocational counselor at a variety of places throughout her career. (R. 1143.) Ms. Gerrish also holds multiple licenses and certifications relating to her work as a vocational expert. (R. 1144.)

As the Supreme court has held, the ALJ determines whether the vocational expert's testimony is reliable. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Based on Ms. Gerrish's many years of experience and the absence of evidence

demonstrating that her testimony about the number of jobs was
inaccurate or that she had a history of inaccurate testimony,
the Court must conclude the ALJ properly relied on her
testimony.  As the Supreme Court has already rejected
plaintiff's argument that a vocational expert must categorically
explain how he or she arrived at the number of jobs in the
national economy, the Court concludes that substantial evidence
supports the ALJ's determination as to the number of jobs in the
national economy having determined that the ALJ properly relied
on the Ms. Gerrish's testimony.

Next, plaintiff challenges Ms. Gerrish's assessment that
plaintiff would be capable of performing the occupation of
parking lot attendant because it is inconsistent with the ALJ's
noise level accommodation.  (Pl. 19-20.)   Plaintiff asserts
that the parking lot noise intensity level is a 4, defined as
loud.  (Pl. Br. 20.)  In the RFC determination, the ALJ found
that plaintiff is limited to a moderate noise level, defined as
a noise intensity level of 3.  (R. 829.)

"Social Security Ruling 00-4p advises that, where an ALJ
relies on evidence from a vocational expert that conflicts with
the Dictionary of Occupational Titles, the ALJ must provide a
reasonable explanation for doing so."  McIntyre v. Colvin, No.
3:12-CV-0318 GTS, 2013 WL 2237828, at *6 (N.D.N.Y. May 21,
2013), aff'd, 758 F.3d 146 (2d Cir. 2014).  "A reasonable

explanation may include that information about a job's requirements is based on the vocational expert's experience." Id.

Ms. Gerrish did not testify as to a discrepancy between the noise level restriction of the parking lot attendant position and the definition under the Dictionary of Occupational Titles (hereinafter "DOT"). (R. 888.)  However, she stated that she adjusted the number of jobs based on her judgment in job placement and experience placing individuals into the jobs she listed. (R. 890.)  Without examining the noise level restriction, the ALJ noted that she accepted Ms. Gerrish's conclusions which were drawn from her professional experiences and observations. (R. 838.)

As in McIntyer, the ALJ provided a reasonable explanation by stating that she based her step five determination on the vocational expert's experience. McIntyre, 2013 WL 2237828, at *6.  Further, plaintiff only takes issue with the noise level of the parking lot attendant job and none of the other positions that the vocational expert listed. Thus, even if the ALJ incorrectly determined that plaintiff could perform the job of parking lot attendant, such an error would be harmless as the ALJ was only required to find one job in the national economy that plaintiff could perform. Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011)("The Commissioner need show only one job

existing in the national economy that [plaintiff] can
perform.").

Finally, plaintiff argues that the ALJ's hypothetical to
Ms. Gerrish was inadequate as it failed to include moderate to
mild limitations in plaintiff's ability to persist at a work
task, perform at a commercially acceptable pace, and concentrate
on work tasks.  (Pl. Br. 24.)  The Court disagrees.

The ALJ only found that plaintiff had moderate limitations
in concentration, persistence, and pace while examining
plaintiff's paragraph B limitations.  (R. 828.)  "It is well
established that a step three determination is not an RFC
assessment, but instead is used to rate the severity of mental
impairment."  Race v. Comm'r of Soc. Sec., No. 1:14-CV-1357
(GTS/WBC), 2016 WL 3511779, at *3 (N.D.N.Y. May 24, 2016)(citing
SSR 96-8p 1996 WL 374182 (July 2, 1996).  The ALJ's analysis of
the paragraph B criteria employs a "special technique" "used to
rate the severity of mental impairments at steps 2 and 3 of the
sequential evaluation process."  Id. at *4.  Where the ALJ
states that this analysis is not a part of the RFC analysis, and
the RFC analysis is supported by substantial evidence, "the ALJ
[does] not commit legal error in formulating an RFC that did not
contain exact verbiage of limitations found at steps two and
three because 'paragraph B' findings are not RFC findings."  Id.

Therefore, the ALJ did not commit an error by failing to incorporate the paragraph B limitations into the RFC finding and thus the hypothetical to Ms. Gerrish.  Regardless, any failure to incorporate plaintiff's mental limitations was harmless.

"[A]n ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014).  However,

> an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]"

Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176,1180 (11th Cir.2011) (collecting cases)).

First, medical evidence demonstrates that plaintiff would engage in simple, routine tasks or unskilled work.  While Dr. Barasch opined that plaintiff had moderate limitations in concentration, persistence, and pace, Dr. Pomeraniec opined that plaintiff had no limitations in understanding and remembering short and simple instructions. (R. 778, 1554.)  State agency physicians, Dr. Leveille and Dr. Johnson, opined that despite plaintiff's moderate limitations in concentration, persistence,

and pace, plaintiff had no limitations understanding and carrying out short and simple instructions.  (R. 79, 98.)

Further, the record demonstrates that plaintiff could perform simple, routine tasks.  Plaintiff reported that she was taking care of her mother-in-law, had a job taking care of two boys, and was taking care of an elderly relative.  (R. 1409, 1410, 1411.)  On plaintiff's activities of daily living questionnaire, she stated that she performed several simple, routine tasks.  For example, plaintiff stated that she prepared meals, washed the laundry, drove a car, and shopped in stores for food, clothing, and gifts. (R. 223, 225, 226.)

Second, the ALJ's hypothetical limited plaintiff to unskilled work as the ALJ limited plaintiff to simple, routine tasks.  (R. 887.)  McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014)(the ALJ's hypothetical limited plaintiff to unskilled work where the ALJ limited the plaintiff to simple, routine, low stress tasks).  As such, the ALJ's error to incorporate plaintiff's moderate limitations in concentration, persistence, and pace was harmless.

Having found no harmful error in the ALJ's analysis, the Court must affirm the ALJ's opinion.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #14-2) is

33

DENIED and the Commissioner's motion to affirm that decision (Dkt. #16-1) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 10th day of July 2020, at Hartford, Connecticut.

<pre>
__          /s/   __ ____ _____
Robert A. Richardson
United States Magistrate Judge
</pre>